Docket No. 13-15079
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

**LARKIN J. SIMMONS and SHEILA A. SIMMONS**

**Plaintiffs/Appellants,**

**v.**

**CITIBANK, N.A., as Trustee for the Certificate Holders of Bear Stearns Alt-A Trust 2006-4, Mortgage Pass-Through Certificates, Series 2006-4; BAC HOME LOANS SERVICING, L.P.; BANK OF AMERICA, N.A.; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; RECONTRUST COMPANY, N.A.**

**Defendants/Appellees.**

---

Appeal from the United States District Court for the District of Arizona,
No. CV-12-01938-PHX-FJM, Honorable Frederick J. Martone

---

**APPELLANTS' REPLY BRIEF**

---

Donald O. Loeb, #005730
*Donald O. Loeb, P.L.C.*
322 North 54th Street
Mesa, Arizona  85205
Telephone: (602) 708-0073
Email: donloeblaw@gmail.com
*Attorney for Appellants*

# TABLE OF CONTENTS

Table of Authorities.................................................................................................... v

I.    INTRODUCTION................................................................................1

II.   The Draftsmen of the Standard Form Fannie Mae and Freddie Mac Deed
      Of Trust Could Not Unilaterally Designate MERS as Both the Nominee
      For the Lender and All Successor Lenders and Assigns Nor Designate
      MERS as the "Beneficiary" Under the Deed of Trust Since MERS Did Not
      Fit Within the Definition of the Term Beneficiary Contained in ARS § 33-
      801(1) and the Simmons Never Knowingly Consented to Allow Their Loan
      To be Converted From an Interest In Real Property Into an Interest in
      Personal Property in the Form of Certificates..................................................... 3

III.  ReconTrust Was Never Lawfully Appointed By a True Beneficiary With
      The Right to Enforce the Note and There Were Unexplained Breaks in the
      Chain of Custody of the Note............................................................................ 4

IV.   As Indicated Recently in *Stauffer v. US Bank National Association,*
      Arizona Court of Appeals Division One Department A, 1 CA-CV 12-0073
      And 1 CA-CV 12-0132 (Filed 09/20/2013) and *Huff v. Mason et.al.,*
      Arizona Court of Appeals Div. One Department E (Filed 8/22/13) Neither
      The United States District Court for the District of Arizona Nor the 9th
      Circuit Court of Appeals Has the Power to Definitively Establish the Law
      In the State of Arizona as That Power is Vested Solely in the Arizona Court
      Of Appeals and in the Arizona Supreme Court and the Circuit Court of
      Appeals Decision in *Cervantes* is No Longer Good Law in Arizona
      Regarding the Use of Forged and Fraudulent Documents in Arizona
      Foreclosure Cases.............................................................................................. 5

V.    The Trustee for the Investors in the Trust/the Residential Mortgage Backed
      Security Did Not Present Admissible Evidence in the Court Below That
      Citibank Ever Obtained Physical Possession of the Note From Anyone,
      Therefore None of the Defendants Including Citibank Are Persons Entitled
      To Enforce the Note and Lack Authority to Non-Judicially Foreclose;
      Additionally Citibank Never Became the Beneficiary With the Right
      To Appoint QLS as the Successor Trustee........................................................ 6

VI. The Right to Foreclose and Sell the Property Does Not Also Give MERS
The Right to Appoint a Successor Trustee Name in the Substitution of
Of Trustee ReconTrust ............................................................................ 8

VII. The Arizona Court of Appeals in *Stauffer* and *Huff v. Mason* (supra) Have
Held That The Use of False Documents Constitutes a Violation of the
False Claims Statute – A.R.S. § 33-420 – and Makes Any Non-Judicial
Foreclosure Resulting from the Use of Such Documents Null and Void .......... 9

VIII. "Splitting" of the Note and Deed of Trust Nullifies any Effort by
Citibank to Foreclose ............................................................................ 10

IX. Appellees Gave No Explanation in the Court Below of Why There Is
No Five-Year GAP in the Chain of Custody of the Note or in the Chain
Of Title to the Deed of Trust Between the Date When the Deed of Trust
Was Recorded and the Note Was Signed by the Simmons and the Date
Five Years Later When the Notice of Substitution of Citibank as Trustee for
The Investors In the Purported Residential Mortgage Backed Security Was
Recorded ............................................................................................. 11

X. Appellees Contend in Their Response Brief, pp. 11 and 12, That the
Simmons Argument That the Deed of Trust is Procedurally and
Substantively Unconscionable Was Never Raised in the Court Below and
Should Not be Addressed by this Court .................................................... 12

XI. The Uniform Commercial Code 'DOES' Have Application to Deeds
Of Trust Sales Despite Appellees' Specious Claim That "In Arizona,
Trustee's Sales Are Governed Exclusively by A.R.S. §§ 33-801 thru 821"
(Response Brief, p. 13), and Appellees' Claim That Such Sales "Are
Governed Only by the Requirements Set Forth In the Chapter Regulating
Such Sales." (Response Brief, p. 14) ....................................................... 16

XII. Only the Person With the Right to Enforce the Note Has Authority To
Foreclose ............................................................................................. 19

XIII. Under the Standard Rules of Statutory Construction, the Deed of Trust
Statutes in Arizona Must Be Read *In Pari Materia* With Arizona's
Version of the Commercial Code to Determine Who Has the Power to
Enforce the Note and Who Has Power, Authority and Standing to Initiate

And Complete a Non-judicial Foreclose ........................................................... 19

XIV.  The Fact That the Simmons Convinced the Trial Court to Grant the
       Temporary Restraining Order Enjoining the Trustee's Sale of the
       Simmons' Property Should Have Entitled the Plaintiffs to an
       Evidentiary Hearing at Which They Should Have Been Permitted to Put
       On Evident that the Note Was Never Transferred to the Securitized
       Trustee Was Error ................................................................................................ 21

XV. CONCLUSION ................................................................................................ 22

XVI.   STATEMENT OF RELATED CASES ........................................................ 23

Certificate of Compliance with Rule 32(a) ........................................................... 24

Certificate of Service ............................................................................................. 25

# TABLE OF AUTHORITIES

## Cases

*Bain v. Metropolitan Mort. Group, Inc.,* 285 P.3d 34r (Wash. 2012)    4, 8

*Bank of America v. Kabba,* 276 P.3d 1006, 1009 (Okla. 2012)    7

*Bank of New York v. Raftogianis*, 13 A.3d 435, 350 (N.J. Super. Ct., App. Div. 2011)    6, 16

*Bank of New York v. Silverberg,* 926 N.Y. Supp. 2nd 532, 537 (App. Div. 2011)    17

*Brandrup v. ReconTrust Co., N.A.,* 303 P.3d 301, 318 (OR. 2013)    4, 8, 9

*Cervantes v. Countrywide Home Loans, Inc.,* 656 F.3d 1034 (9th Cir. 2011)    5, 9, 10

*Carpenter v. Longan,* 83 U.S. (16 Wall.) 271, 21 L.Ed 313 (1872)    10, 11

*Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.,* 140 Ariz. 383, 682 P.2d 388 (1984)    13

*Eaton v. Federal National Mortgage Ass'n,* 969 N.E. 2d 1118 (Mass. 2012)    17

*Glaski v. Bank of America, N.A.,* 218 Cal. App. 4th 1079, 160 Cal. Rptr. 3rd 499 (2013)    13

*Herrera v. Deutsche Bank National Trust Company,* 196 Cal. App. 4th 1366, 1378    4, 12

*Hill v. Favour*, 52 Ariz. 561, 84 P.2d 575 (1938)    17

*Hogan v. Washington Mutual Bank, N.A.,* 230 Ariz. 584, 277 P.3d 781 (2012)    16, 18

*HSBC v. Hernandez,* 939 NYS.2d 120, 122 (N.Y. App. Div. 2012)    16, 17

*Huff v. Mason et.al.,* Arizona Court of Appeals Div. One
Department E (Filed 8/22/13)    5, 9, 20

*In Re Mortgage Elec. Registration Systems (MERS) Litg.,*
2011 WL 4550189 (D.Ariz. Oct. 3, 2011)    9

*Jackson v. Mortgage Electronic Registration Systems, Inc.,*
770 N.W.2d 487 (Minn. 2009)    3

*Maxa v. Countrywide Loans, Inc.,* 2010 WL 2836958
(W.D. Wash. Feb 24, 2012)    9, 10

*Mortgage Elec. Registration Sys., Inc. v. Saunders,*
2 A.3d 289, 295-96 (Me. 2010)    19

*Niday v. GMAC Mortgage, LLC,* 302 P.3d 444 (OR. 2013)    4, 8, 17

*RMS Residential Properties, LLC v. Milner,* 3 A.3d 307, 313-14
(Connecticut. 2011)    19

*Rodney v. Arizona Bank,* 836 P.2d 434 (Ariz. 1992)    17

*Shapiro v. Family Bank,* 538 So.2d 944 (Fla. App. 1989)    12

*Stauffer v. US Bank National Association,* Arizona Court of Appeals
Division One Department A, 1CA-CV 12-0073 and 1 CA-CV 12-0132
(Filed 09/20/2013)    5, 9, 20

*Veal v. Am. Home Mortg. Servicing, Inc. (In re Veal),*
450 B.R. 897, 911-12 (BAP 9th Cir 2011)    18

*Walker v. Quality Loan Service Corp.,* 65975-8-1, (Wash. Ct. App. 2013)    8

*Weingartner v. Chase Home Mortgage Fin., LLC,*
702 F.Supp. 2d 1276 (Nev. 2010)    8

**<u>Statutes and Rules</u>**

A.R.S. § 33-420                                                                            9, 20

A.R.S. §§ 33-801 thru 821                                                       2, 3, 16, 17

Section 5.4 Restatement of Property (3rd) Servitudes                              18

Uniform Commercial Code                                              16, 17, 19, 20, 21

**<u>Other Authorities</u>**

Elizabeth Renuart, "Uneasy Intersections: The Right to Foreclose
And the UCC," 48 Wake Forest Law Review, p.5                                      19

## I.    INTRODUCTION

In the Defendant/Appellees' Answering Brief, the Appellees Never Set Forth Facts Proving Any of the Following Assertions of Fact Set Forth in Their Response Brief.

1.    That Citibank was the trustee for the Certificate holders of the Trust in question or facts showing that Plaintiff's Loan was one of the loans placed into the Trust. [Response Brief, p. 1.]

2.    That BAC Home Loans Servicing, LP was ever the "servicer" of the Plaintiff Simmons' loan pursuant to any contract with Citibank as Trustee for the Investors. [Response Brief, p. 1.]

3.    That MERS could ever have lawfully transferred possession of the original Note to the Trust or assigned the Deed of Trust to Citibank as Trustee for the Investors since MERS was never in physical possession of the Note.

Defendant/Appellees incorrectly claim that the District Court "reviewed and dismissed at least four similar actions brought by Mr. Loeb under these or similar theories in 2012." [Response Brief, p. 3, footnote (fn) 3.] To the contrary, in the cases cited in fn 3, the plaintiffs in those cases represented at the time by the Simmons' current attorney, made numerous allegations in those cases in their Complaints which bear little or no

resemblance to the allegations contained in the various Counts of the Simmons' Complaint.

The allegations in these separate cases included:

(1)    Allegations that the entity seeking to foreclose was never the beneficiary as that term is defined in A.R.S. § 33-801(1) and, therefore, the entity could not lawfully appoint anyone as a Substitute Trustee or direct a Substitute Trustee to record the Notice of Trustee's Sale or thereafter go forward with a Trustee's Sale of the property.

(2)    Allegations that the foreclosing purported successor lender was never "in physical possession of the note."

(3)    Allegations that the purported successor lender could not lawfully enforce the note, exercise the power of sale, initiate the foreclosure or sell the property at any threatened trustee's sale.

(4)    Allegations that the original lender named in the deed of trust in those other cases never transferred the note or possession of the note to the Trust or assigned the deed of trust to the Trust (RMBS) at all, let alone within the 90-day window time period set forth in the applicable Pooling and Servicing Agreement and further alleged that those trusts were never collateralized or mortgage backed depriving the foreclosing purported

successor lender in those cases of the right to claim status as the holder of the note, with the right to exercise the power of sale.

## II. The Draftsmen of the Standard Form Fannie Mae and Freddie Mac Deed of Trust Could Not Unilaterally Designate MERS as Both the Nominee for the Lender and All Successor Lenders and Assigns Nor Designate MERS as the "Beneficiary" Under the Deed of Trust Since MERS Did Not Fit Within the Definition of the Term Beneficiary Contained in ARS § 33-801(1) and the Simmons Never Knowingly Consented to Allow Their Loan to be Converted From an Interest In Real Property Into an Interest in Personal Property in the Form of Certificates.

On p. 4 of their Response Brief, Appellees claim that MERS is named as the nomine for the lender, the "Lender's successors and assigns," and is also the beneficiary.

Since MERS never had possession of the Note, never received any monthly mortgage payments from the Plaintiff borrowers, never stood to lose anything if the Simmons went into default on their loan, was never the holder of the note, was never the loan servicer, and was never the trustee or successor trustee under the deed of trust, MERS did not meet the definition of "beneficiary" contained in A.R.S. § 33-801(1), which requires that the beneficiary be the entity entitled to payments made by the borrowers.

Additionally, as indicated in the dissent of Justice Alan Page in *Jackson v. Mortgage Electronic Registration Systems, Inc.*, 770 N.W.2d 487 (Minn. 2009), MERS must be a party to a separate contract with each

purported successor lender/beneficiary before it can lawfully execute a Substitution of Trustee. Appellees have presented no written agreement showing that MERS ever had a contract with the Trustee for the Investors in the purported RMBS. MERS was therefore never lawfully reappointed by any purported successor lenders as either the nominee or as the beneficiary under the deed of trust. *Niday v. GMAC Mortgage, LLC,* 302 P.3d 444 (OR. 2013) In the Supreme Court of the State of Oregon, CC CV10020001; CA A147430; SC S060655 (Filed June 6, 2013); *Brandrup v. ReconTrust Co., N.A.,* 303 P.3d 301, 318 (OR. 2013); and *Bain v. Metropolitan Mort. Group, Inc.,* 285 P.3d 34 (Wash. 2012).

## III.    ReconTrust Was Never Lawfully Appointed By a True Beneficiary With the Right to Enforce the Note and There Were Unexplained Breaks in the Chain of Custody of the Note.

As a result, ReconTrust could not lawfully record the Notice of Trustee's Sale or go forward with the Trustee's Sale of the Appellants' residence.

Furthermore, in *Herrera v. Deutsche Bank National Trust Company,* 196 Cal. App. 4th 1366, 1378, the court concluded that triable issues of material fact existed regarding alleged breaks in the chain of ownership of the deed of trust.

Simmons alleged in the court below that there were material gaps in both the chain of custody of the Note and in the chain of title to the property.

**IV.** **As Indicated Recently in *Stauffer v. US Bank National Association*, Arizona Court of Appeals Division One Department A, 1 CA-CV 12-0073 and 1 CA-CV 12-0132 (Filed 09/20/2013) and *Huff v. Mason et.al.*, Arizona Court of Appeals Div. One Department E (Filed 8/22/13) Neither the United States District Court for the District of Arizona Nor the 9th Circuit Court of Appeals Has the Power to Definitively Establish the Law in the State of Arizona as That Power is Vested Solely in the Arizona Court of Appeals and in the Arizona Supreme Court and the Circuit Court of Appeals Decision in Cervantes Is No Longer Good Law in Arizona Regarding the Use of Forged and Fraudulent Documents in Arizona Foreclosure Cases.**

At p. 5 of their Response Brief, Appellees note that in *Cervantes*[1] the court held that MERS could be the beneficiary under the deed of trust in question. That statement in *Cervantes* was however only an estimate of what the Arizona Supreme Court or the Court of Appeals might hold in the future regarding MERS' authority to act as the agent/nominee/ beneficiary on behalf of the original lender. Such speculation does not form a foundation for the Appellees' claim that the Arizona courts have finally determined that MERS has the power or the right to act as beneficiary to appoint ReconTrust as Substitute Trustee since that specific issue, whether MERS meets the definition of beneficiary contained in the above statute, has

---

[1]     *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034 (9th Cir. 2011).

never been addressed either by the Arizona Court of Appeals or by the Arizona Supreme Court.

Nor can the 9th Circuit Court of Appeals set forth as binding law in the State of Arizona that MERS is not a "sham beneficiary." [Response Brief, p.8.] That issue has not yet been decided by any Arizona Appellate Court and was never addressed let alone decided by the court below when the court granted the Defendant Appellee's broad motion to dismiss.

MERS has never demonstrated that its principal the purported successor lender Citibank is Trustee for the Plaintiffs Larkin J. Simmons and Sheila A. Simmons.

**V.    The Trustee for the Investors in the Trust/the Residential Mortgage Backed Security Did Not Present Admissible Evidence in the Court Below That Citibank Ever Obtained Physical Possession of the Note From Anyone, Therefore None of the Defendants Including Citibank Are Persons Entitled to Enforce the Note and Lack Authority to Non-Judicially Foreclose; Additionally Citibank Never Became the Beneficiary With the Right to Appoint QLS as the Successor Trustee.**

In order to demonstrate its authority to exercise the power of sale, Citibank was required first to present evidence that Citibank as Trustee for the Investors obtained physical possession of the Note with the right to enforce the note before it could claim status as beneficiary under the Deed of Trust. *Bank of New York v. Raftogianis,* 13 A.3d 435, 350 (N.J. Super. Ct. App. Div. 2011); possession of note required in order to be a nonholder with

the rights of a holder *Bank of America v. Kabba,* 276 P.3d 1006, 1009 (Okla. 2012). Additionally, in order to demonstrate its right to proceed with a Trustee's Sale of the Simmons' Property or to appoint ReconTrust to conduct that sale it was incumbent upon Citibank to show that the loan originator, the purported original Lender named in the Deed of Trust, had transferred the Note to a Sponsor, that the Sponsor had thereafter transferred the Note to a Depositor, and that thereafter the Depositor had transferred the Note to Citibank as Trustee for the Investors in the present Residential Mortgage Backed Security.

Additionally, no admissible evidence was ever presented to the court below that the Deed of Trust was ever "assigned" to the Sponsor, that the Sponsor ever assigned the Deed of Trust to the Depositor, or that the Depositor ever assigned the Deed of Trust to Citibank as Trustee for the Investors. In the absence of any proof of such an assignment, Citibank never became the beneficiary with either the right to foreclose or the right to appoint QLS as the Successor Trustee.

No evidence or sworn testimony by affidavit or otherwise in the court below was ever presented showing that the RMBS over which Citibank acted as Trustee was ever "collateralized" or became "mortgage backed"

sufficient to give Citibank status as the beneficiary under the Deed of Trust with the commensurate right to appoint ReconTrust as Substitute Trustee.

This lack of evidence of standing or the right to foreclose on the part of Citibank requires that this court reverse and remand the case to the trial court for further proceedings not inconsistent with the anticipated decision of this court reversing the trial court's judgment granting Appellees' Motion to Dismiss.

## VI. The Right to Foreclose and Sell the Property Does Not Also Give MERS the Right to Appoint a Successor Trustee Name in the Substitution of Trustee ReconTrust.

However, the court in *Walker v. Quality Loan Service Corp.,* 65975-8-1, (Wash. Ct. App. 2013), the court held that MERS lacked authority to appoint substitute trustees. *See* also *Weingartner v. Chase Home Mortgage Fin., LLC,* 702 F. Supp. 2d 1276 (Nev. 2010) MERS "beneficial interest is nonexistent unless MERS holds the underlying debt, which it does not.").

Appellees argue that MERS is a valid beneficiary with the power not only to foreclose and to appoint a Successor Trustee. However, the cases cited in their Response Brief do not hold that MERS also has the power to act as beneficiary to appoint a successor trustee. *Bain* (supra)*; Niday* (supra.); and *Brandrup* (supra.). In *Bain,* the Washington Supreme Court and the Oregon Court of Appeals in *Niday* and the Oregon Supreme Court in

*Brandrup* held that MERS did not meet the statutory definition of beneficiary and could not exercise the power of sale, non-judicially foreclose, or appoint a successor trustee,

**VII.  The Arizona Court of Appeals in *Stauffer* and *Huff v. Mason* (supra) Have Held That the Use of False Documents Constitutes a Violation of the False Claims Statute – A.R.S. § 33-420 - and Makes Any Non-Judicial Foreclosure Resulting from the Use of Such Documents Null and Void.**

Appellees state that in the MDL cases, *In Re Mortgage Elec. Registration Systems (MERS) Litg.,*[2] Judge Teilborg rejected the argument that all non-judicial foreclosures involving MERS are invalid. [Response Brief, p. 9.]; and that "this court has recognized, that designation of MERS as beneficiary was proper under Arizona law." (citing *Cervantes*, 656 F.3d at 1042.) [Response Brief, p. 16.]

To the contrary, Division One of the Arizona Court of Appeals in *Huff* (supra) has held that the use of false and fraudulent documents in connection with an effort to non-judicially foreclose a home mortgage loan constitutes a violation of the Wrongful Lien Statute, A.R.S. § 33-420.

The cases relied upon by the court in *Maxa,*[3] cited by the Defendants in their Response Brief  at p. 9, were all decided before the MERS was used

---

[2]     2011 WL 4550189 (D. Ariz. Oct. 3, 2011).

[3]     *Maxa v. Countrywide Loans, Inc.,* 2010 WL 2836958 (W.D. Wash. Feb 24, 2012).

as a substitute for the recording systems in place in all 50 states. The *Maxa* case is therefore not precedent for Appellees' statement that "no Arizona authority has been found that requires a beneficiary under the Deed of Trust to be the owner and holder of the Note…. [Response Brief, pps.9-10.]

## VIII. "Splitting" of the Note and Deed of Trust Nullifies Any Effort by Citibank to Foreclose.

In *Cervantes* (supra), the U.S. Court of Appeals for the Ninth Circuit merely speculated as to what the Arizona Court of Appeals or the Arizona Supreme Court might hold In the future regarding whether MERS has the power or the authority to appoint a Successor Trustee in place of the Trustee originally named in the Deed of Trust.

Additionally the *Cervantes* court did not address the question of whether *Carpenter v. Longan*,[4] which holds that once the note and deed of trust have been split no one can thereafter foreclose. The Simmons therefore respectfully submit that this court should reverse the ruling of the District Court and remand the case to the District Court in order to allow the Plaintiff/Appellants an opportunity to brief the issue of whether the splitting of the Note from the Deed of Trust as a result of the effort to place the Note into the Trust served to bar Citibank as Trustee for the Investors from exercising the power of sale and from appointing ReconTrust as Successor

---

[4]    83 U.S. (16 Wall.) 271, 21 L.Ed 313 (1872).

Trustee to record the Notice of Trustee's Sale and thereafter conduct the planned Trustee's Sale. Additionally, reversal is appropriate to determine in the court below whether, if the Note and Deed of Trust were split, the Note and Deed of Trust were ever "reunited," and if that happened whether the Trustee for the Investors reacquired the right to enforce the Note and the right to appoint a Substitute Trustee.

Since the law set forth in *Carpenter* (supra) has never be reversed or overruled, the law set forth in that case is still the law of the land and a splitting of the Note and Deed of Trust precludes foreclosure of the Deed of Trust and enforcement of the Note as well.

IX.    **Appellees Gave No Explanation in the Court Below of Why There Is No Five-Year GAP in the Chain of Custody of the Note or in the Chain of Title to the Deed of Trust Between the Date When the Deed of Trust Was Recorded and the Note Was Signed by the Simmons and the Date Five Years Later When the Notice of Substitution of Citibank as Trustee for the Investors In the Purported Residential Mortgage Backed Security Was Recorded.**

In fact, in the court below, the Appellees presented no admissible evidence by affidavit or otherwise of what happened to either the note or the deed of trust during the above time period. Thus, no explanation has been given of when or how the Note was ever transferred from the Loan Originator to Citibank as Trustee for the Investors. Furthermore, no explanation has been given by the Appellees as to "when" the purported

assignment of the Deed of Trust was ever "registered" in the MERS system let alone information regarding the date when such an assignment of the Deed of Trust to the Trust occurred.

In *Herrera* (supra), the court concluded that triable issues of material fact existed regarding alleged breaks in the chain of ownership of the deed of trust in question. Those triable issues existed because Deutsche Bank's motion for summary judgment failed to establish it was the beneficiary under that deed of trust.

And a wrongful acquisition of possession will not trans ownership of the note. *Shapiro v. Family Bank,* 538 So.2d 944 (Fla. App. 1989).

Citibank therefore lacks standing to non-judicially foreclose and its appointment of ReconTrust as Substitute Trustee should have been held to be null and void and of no force or effect requiring reversal.

**X.    Appellees Contend in Their Response Brief, pp. 11 and 12, That the Simmons Argument That the Deed of Trust is Procedurally and Substantively Unconscionable Was Never Raised in the Court Below and Should Not be Addressed by this Court.**

This contention is incorrect. However, at a minimum, District Court's Order and Judgment should be reversed and remanded to the court below in order to permit the Plaintiff borrower/trustors/the Simmons to file a First Amended Complaint including an allegation that the Deed of Trust was both procedurally and substantively unconscionable and was an unlawful contract

of adhesion under the *Darner* [5] case and to allege that Citibank was never "in possession of the Note" and therefore lacked status as "a person entitled to enforce the note" (i.e., had PETE status) since the Note was never transferred by the original lender to the Trust within the 90-day window time period before the Trust closed. (*See Glaski v. Bank of America, N.A.*, 218 Cal. App. 4th 1079, 160 Cal. Rptr. 3rd 499 (2013). Citibank therefore lacked the right either to exercise the power of sale or the power to non-judicially foreclose.

Here, the reasonable expectation of the Borrowers was never that the loan originator named as the "Lender" in the Deed of Trust would transfer the Note and assign the Deed of Trust to a Sponsor, that the Sponsor would then transfer the Note and assign the Deed of Trust to a Depositor, or that the Depositor would ever transfer the Note and assign the Deed of Trust to Citibank as Trustee for the Investors.

Nor did the lay borrowers, the Simmons, ever understand that they had supposedly given their unequivocal consent to allow their original lender to "convert" their loan from an interest in and a lien or encumbrance upon "real property" into an interest in and lien upon "personal property" in

---

[5]    *Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.*, 140 Ariz. 383, 682 P.2d 388 (1984).

the form of certificates issued to investors whose names and identities would be withheld from them.

Nor were they ever notified before they signed the Note and the Deed of Trust that they would never be permitted to contact their purported successor lender, the Trustee for the Investors, to determine whether that Trustee would or could lawfully modify their loan after the value of their property declined by as much a 70% from the value on the date they signed the Note and the Deed of Trust to the date when the Notice of Trustee's Sale was recorded.

Nor were the Borrowers ever notified before they signed the Note and Deed of Trust that the decision to grant or to deny a loan modification would be made, not by the "holder" of the Note in possession of the original Note, but instead by a "loan servicer"/"agent" representing a successor lender/"principal" whose name and business address would not be revealed to the Borrowers.

The language of the Standard Form Freddie Mac and Fannie Mae Deed of Trust should therefore be construed against the draftsman and the court should reverse the Judgment in the court below and allow the case to go forward in order to allow the Plaintiff Borrowers to demonstrate that

Citibank cannot lawfully enforce the Note, appoint a Substitute Trustee, exercise the power of sale, or non-judicially foreclose.

Contrary to Appellees' contention, the standard form Fannie Mae and Freddie Mac Deed of Trust which unilaterally designates MERS as both the nominee for the lender and its successors and assigns and also as the beneficiary was generated AFTER the MERS system was developed to allow mortgage transactions to be conducted in nano-seconds no opportunity for the borrowers to discuss the pros and cons of signing either the promissory note or the deed of trust or what the consequences might be when their loan was securitized or what would happen if property values in Arizona sunk to below 70% of their value by late 2007 and 2008,

Nor were the Simmons ever told that the typical Pooling and Servicing Agreements absolutely prohibited the trustee for the investors from modifying the loans without the written consent of at least 50% of the Certificate holders.

Furthermore, no representative of the loan originator/Lender was present at the time a title company escrow officer met with the Simmons when they were asked to sign and initial at least 169 pages of loan documents, who lacked sufficient knowledge to answer any questions the Simmons may have had at that time.

It is hard to imagine a better example of an unenforceable contract of adhesion which requires reformation of the Deed of Trust in a court of equity in the court below.

**XI.    The Uniform Commercial Code 'DOES' Have Application to Deeds of Trust Sales Despite Appellees' Specious Claim That "In Arizona, Trustee's Sales Are Governed Exclusively by A.R.S. §§ 33-801 thru 821" (Response Brief, p. 13), and Appellees' Claim That Such Sales "Are Governed Only by the Requirements Set Forth In the Chapter Regulating Such Sales." (Response Brief, p.14).**

Appellees blandly cite *Hogan*[6] for the proposition that A.R.S. §§ 33-801 to 821 provide the "ONLY PROCEDURE" FOR A VALID TRUSTEE'S SALE. [Response Brief p. 13.]

However, if that were true, then how do the Appellees explain why there are statutes in art. 3 and art. 9 of Arizona's Version of the Uniform Commercial Code dictating the specific procedures required to be used for transferring a note secured by a Deed of Trust from the original lender to a successor lender attempting to foreclose? Those rules/statutes must be followed and the transfer of the note in accordance with those rules is a precondition for the exercise of the power of sale by the successor lender whether the trustee is the trustee for the investors in a purported Residential Mortgage Backed Security or not. *Raftogianis* (supra) and *HSBC v.*

---

[6]    *Hogan v. Washington Mutual Bank, N.A.,* 230 Ariz. 584, 277 P.3d 781 (2012).

*Hernandez,* 939 NYS.2d 120, 122 (N.Y. App. Div. 2012); *Eaton v. Federal National Mortgage Ass'n,* 969 N.E. 2d 1118 (Mass. 2012).

Surely such statutes forming an integral part of the Uniform Commercial Code implicate the entire foreclosure process and the UCC's rules for transfer of a Note secured by a Deed of Trust and cannot be ignored with the parties relying solely upon the far more general statutes contained in A.R.S. §§ 33-801 to 820. The Deed of Trust Statutes deal with assignments of the Deed of Trust rather than with transfers of the more important instrument - the note - since the deed of trust follows the note, not vice versa. *Rodney v. Arizona Bank,* 836 P.2d 434 (Ariz. 1992); *Hill v. Favour,* 52 Ariz. 561, 84 P.2d 575 (1938).

In the vast majority of states, the courts have held that the mortgage automatically follows the note. [*See Bank of New York v. Silverberg*, 926 N.Y. Supp. 2nd 532, 537 (App Div. 2011)] (status as the person entitled to enforce the note not ownership governs the right to foreclose): *Niday* (supra); (*See* also Eaton v. Fed. Nat'l Mortg. Ass'n, 969 NE. 2d 1118, 1128-30 (Mass 2012) (defining a "mortgagee" in light of the Massachusetts foreclosure provisions and common law to include the party who also holds the note or the one who is acting on behalf of the note holder; not relying on the UCC but noting that "nothing in the UCC is inconsistent with the view

that in order to effect a valid foreclosure, a mortgagee must either hold the note or act on behalf of the note holder); Veal v. Am. Home Mortg. Servicing, Inc. (In re Veal), 450 B.R. 897, 911-12 (BAP 9th Cir 2011).

Thus it is hornbook law that one must have the right to enforce the obligation, represented by the promissory note, in order to foreclose the mortgage.

Appellees nevertheless erroneously claim that the UCC has no application to deeds of trust citing *Hogan* (supra).  However, the borrower Hogan in his Complaint in that case never alleged or made an argument contending that the UCC should be read in *pari material* with the Deed of Trust statutes or that the note had never been transferred to the Trust. Therefore, language resolving that complex issue in favor of the Appellees in the *Hogan* case is merely *dicta* since the Arizona Supreme Court in *Hogan* never addressed the issue of the applicability of the UCC in any depth in its bi-polar opinion in that case.

To the contrary, the court in its bi-polar opinion in *Hogan* (supra) stated that only a person entitled to enforce the note can non-judicially foreclose a deed of trust citing section 5.4 of the Restatement of Property (3rd) Servitudes but later in the same opinion inconsistently held that PETE

status – i.e., ascertaining the name of the "person entitled to enforce the note" did not matter.

## XII. Only The Person With the Right to Enforce the Note Has Authority to Foreclose.

When the issue of the right to foreclose arises in litigation, the vast majority of courts hold that the foreclosing party must possess the right to enforce the note under art. 3 if the note is negotiable. Elizabeth Renuart, "Uneasy Intersections: The Right to Foreclose and the UCC," 48 Wake Forest Law Review, p.5; *See RMS Residential Properties, LLC v. Milner*, 3 A.3d 307, 313-14 (Connecticut. 2011) (interpreting "person entitled to receive the money secured thereby" in the state foreclosure statute to be the "holder" of a negotiable note under UCC Article 3); *Mortgage Elec. Registration Sys., Inc. v. Saunders*, 2 A.3d 289, 295-96 (Me. 2010) (holding that the "mortgagee" or the entity that may foreclose refers to the mortgage creditor or lender, that is, the person entitled to enforce the debt citing to the UCC Section 3-301 to define person entitled to enforce if the note is negotiable).

## XIII. Under the Standard Rules of Statutory Construction, the Deed of Trust Statutes in Arizona Must Be Read *In Pari Materia* With Arizona's Version of the Commercial Code to Determine Who Has the Power to Enforce the Note and Who Has Power, Authority and Standing to Initiate and Complete a Non-judicial Foreclose.

The courts as a part of statutory construction are required to determine whether a particular statute has completely occupied the filed precluding any other statutes from being applied to decide the case. However, when a statute does not specifically preclude application of any other statute, the courts are required to read the statute *in pari material* with other statutes to see if there is an irreconcilable conflict between the two statutes.

Conflicts regarding which statutes govern when, as here there is an obvious conflict with the Deed of Trust Statutes and art. 3 and art. 9 of the commercial code, the courts should apply the rules for reconciling the two statutes and seek to reach the goals of both statutes.

If a failure to apply the requirements set forth in art 3 of the Uniform Commercial Code results in a ruling allowing anyone including a "rogue lender" to take a borrower's home without due process of law in a so-called non-judicial foreclosure using false and fraudulent documents to achieve that result, the goal of both the commercial code and the deed of trust statutes to conduct foreclosure sales in a fair and impartial manner would never be achieved.

Recent Arizona Appellate Decisions including *Stauffer* (supra) and *Huff* (supra) have held that the use of fraudulent documents to non-judicially foreclose is a violation of the wrongful lien statute, A.R.S. § 33-420. The

holdings in those cases indicate that the specific requirements set forth in art. 3 of the Uniform Commercial Code specifically dealing with the procedures to be used for transferring a promissory note from the original lender named in the deed of trust to a purported successor lender, including from the loan originator to the Trustee for the Investors in a supposed Residential Mortgage Backed Security, are now fair game for an argument and challenge by the affected borrower claiming that both the transfer of the Note and the assignment of Deed of Trust in this case were made in violation of the procedures set forth in the UCC for transferring the note.

**XIV. The Fact That the Simmons Convinced the Trial Court to Grant the Temporary Restraining Order Enjoining the Trustee's Sale of the Simmons' Property Should Have Entitled the Plaintiffs to an Evidentiary Hearing at Which They Should Have Been Permitted to Put on Evidence that the Note Was Never Transferred to the Securitized Trustee Was Error.**

However, they were never given that opportunity because, using the ploy of a Notice of Removal, Defendants successfully allowed the TRO granted by Judge Georgini to expire and allowed the Defendants to file a spurious Motion to Dismiss on the sole basis of "the show me the note" argument depriving the Simmons to their right to a hearing at a meaningful time and in a meaningful manner on the issue of whether their home should be taken away from them forever because possession of the note by Citibank or the lack thereof didn't matter as it does in most other states.

With much hard work and due diligence, the Plaintiffs obtained a temporary restraining order only to learn that once the case was removed to federal district court the 10-day temporary restraining order was allowed to expire and soon thereafter the court granted Defendants' standard Motion to Dismiss the case and awarded the Defendants their reasonable attorney's fees.

Unlike most borrowers seeking a reasonable loan modification who simply cannot afford an attorney to meet the stringent requirements for enjoining a trustee's sale, the Simmons WERE able to stop that sale in the Arizona Superior Court allowing them to keep up the fight to bar the wrongful foreclosure of their property by an entity that lacked the authority to exercise the power of sale, to enforce the note, or to foreclose. They fully complied with the burden of proof placed upon them to demonstrate at the preliminary stage that the foreclosing lender lacked the power to do so as set forth in A.R.S. § 33-811(b) and (c).

## XV.  CONCLUSION

For the reasons set forth above, the judgment and order dismissing the Simmons' First Amended Complaint should be reversed and remanded to the court below for further proceedings not inconsistent with the Court's opinion.

## XVI.  STATEMENT OF RELATED CASES

Pursuant to Circuit Rule 38-2.6, Plaintiffs/Appellants are not aware of any related case, as defined in Circuit Rule 28-2.6(a)(b)(c) or (d), pending in this Court.

DATED this 4th day of November, 2013.

Donald O. Loeb, P.L.C.

By: /s/ Donald O. Loeb
    Donald O. Loeb, Esq.
    322 North 54th Street
    Mesa, Arizona 85205
    Attorney for Appellants

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

1.      This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because this brief contains 5,134 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirement of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in fourteen-point Times New Roman.

/s/ Donald O. Loeb
Donald O. Loeb, Esq.
*Attorney for Appellants*

Dated: November 4, 2013

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on November 4, 2013.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

*/s/* Donald O. Loeb
Donald O. Loeb, Esq.
*Attorney for Appellants*

Dated:  November 4, 2013